## KEEP VS. SANDERSON.

A clause in an assignment by an insolvent debtor for the benefit of creditors, authorizing the assignee to sell and dispose of the assigned property "upon such terms and conditions as in his judgment may appear best and most to the interest of the parties concerned," is equivalent to authority to sell on *credit*, and such an assignment operates to hinder and delay creditors, and, as against them, is fraudulent and void. *Keep vs. Sanderson*, 2 Wis., 42, cited and adhered to.

Where the assignee under such an assignment, is summoned as garnishee under an attachment against the property of the assignor, by one of such creditors, and it appears on the hearing, that after the service of such summons he had converted the assigned property into money, or that before such service he had converted the same into money which then remained in his hands, he is to be regarded as indebted to the assignor for the money so received by him, and the creditor is entitled to judgment against him, as garnishee, accordingly.

A judgment against the defendants in an attachment suit is not void for want of jurisdiction, because the defendants were non-residents, and were not served with process, and because at the time of rendering such judgment the garnishee had filed an answer denying that he was indebted to the defendants, or had any property belonging to them in his possession, the issue upon which answer was then undetermined, if it appear that such issue was afterwards determined against the garnishee, and judgment rendered against him, it being the *fact* of the garnishee's indebtedness and not its ascertainment, which conferred jurisdiction against the principal debtors.

Where an issue is made between the plaintiff in an attachment suit and a garnishee, upon the answer of the latter, *it seems* that such answer is never admissible in evidence on the trial of such issue; but where, under the law allowing parties to be witnesses in their own behalf, the garnishee caused his own deposition to be taken and read on the trial of such issue, there was clearly no error in excluding his answer as evidence.

Where a judge files a finding, which is excepted to as not being in accordance with the requirements of the Code, he has power to file an amended finding, and the time and manner of his doing so must depend in a great measure upon his discretion.

Where the finding of the court sets forth at large the assignment under which a garnishee received the property for which he is sought to be made accountable, and that assignment is "by its very terms fraudulent in law and in fact," the invalidity of the assignment sufficiently appears by such finding.

June Term, 1860.

KEEP v. SANDERSON.

APPEAL from the Circuit Court for *Dane* County.

On the 5th of June, 1854, a writ of attachment was issued out of the circuit court for Rock county, in favor of *John M. Keep*, against Charles R. P. Wentworth and Thomas C. Manchester, with the affidavit of said *Keep* annexed, setting forth, among other things, that he had good reason to believe that said Manchester and Wentworth were not residents of this state, and that they had assigned and disposed of their property with intent to defraud their creditors. On the same day said *Keep* filed an affidavit, stating, among other things, "that he verily believed that *George B. Sanderson* had property, credits and effects in his possession, to wit: money, notes and accounts, mortgages and merchandise, belonging to the above named defendants (Manchester and Wentworth), and that said *Sanderson* was indebted to said defendants.

On the 9th of June, 1854, *Sanderson* was summoned as garnishee, by a notice requiring him to appear before the circuit court of Rock county, on the third Monday of November, 1854, to answer on oath, &c. On the 19th of June, 1854, an affidavit was made and filed by the attorney of the plaintiff, stating that the time of holding said court had been changed from the third Monday to the fourth Monday of November, of which he was not aware until the 10th day of said month of June, and on the 20th day of said month an order was made by the circuit judge, striking out the word "third" before the words "Monday of November, 1854," and inserting the word "fourth" instead thereof, in the attachment as well as in the notice served upon *Sanderson*, and a copy of said order was served upon *Sanderson* on the first day of July, 1854. On the 25th of November, 1854, the sheriff levied said attachment upon several parcels of real estate in Rock county, as the property of said Manches-

ter and Wentworth. On the 13th of December, 1854, *Sanderson* made his answer as garnishee. In this answer he states that he had no property, goods, chattels, notes, mortgages, or choses in action, belonging to the defendants (Manchester and Wentworth), or either of them, in his possession or under his control, at the time of the service of the garnishee process on him in this case, or at any time afterwards. He further states that on the 19th of February, 1852, said defendants made an assignment to him in writing, by virtue whereof there came into his hands, on that day, from the defendants, goods, wares and merchandise to the amount of about $7,000, notes, mortgages and accounts to the amount of about $6,000, and real estate to the amount of about $2,000, as the same were invoiced, all of which, or the proceeds thereof, he still holds under said assignment. He annexed to his answer a copy of the assignment, which is the same that is recited at large in the case of *Keep vs. Sanderson*, 2 Wis., 42, and contained a clause authorizing the assignee to sell and dispose of the assigned property "upon such terms and conditions as in his judgment may [might] appear best and most to the interest of the parties concerned." Notice of the pendency of the attachment suit was duly given to Manchester and Wentworth by publication. In March, 1855, *Keep* filed his declaration in the attachment suit in the usual form, with money counts, with a notice that he would give in evidence two notes of the defendants, therein described, for $2,199 46 each, and in the same month the venue of said attachment suit, as well as of the garnishee proceedings against said *Sanderson*, was changed to the Dane circuit court. On the 16th of May, 1855, judgment was rendered in the Dane circuit court in favor of the plaintiff *Keep*, against Manchester and Wentworth, for $5,263 38. On the same day *Sanderson* made, in open court, under oath, a further answer as garnishee, in which he denied any indebtedness whatever to Manchester and Wentworth, or that he had in his hands any property, moneys or credits belonging to them, over and above his liability as garnishee in previous attachment suits.

On the 11th of December, 1856, on motion of the plain-

June Term,
1860.

KEEP
v.
SANDERSON.

tiff's attorney, it was ordered by the court "that the plaintiff may make an issue upon the answer of said *Sanderson* within one hundred days, as follows : The plaintiff shall file and serve his declaration, alleging that the said *Sanderson* is indebted to said Manchester and Wentworth in the sum of ten thousand dollars, and also, in another count, that the said *Sanderson* has in his possession money and property belonging to said Manchester and Wentworth of the value of ten thousand dollars; that said *Sanderson* shall plead issuably to said declaration within ten days," &c. A declaration was accordingly filed, and *Sanderson* pleaded thereto in denial of each count. The trial of said issues was submitted to the court, without a jury. On the trial the plaintiff read in evidence the record of his judgment against Manchester and Wentworth, above referred to, and introduced proof tending to show that the defendant *Sanderson* had, by the sale of the goods and real estate, and collection of the notes and accounts embraced in the assignment before mentioned, received sufficient moneys to pay the plaintiff's judgment, after satisfying the claims of such creditors of Manchester and Wentworth as had commenced proceedings against him as garnishee, prior to the service of the process upon him in this case. In connection with this proof, the plaintiff put in evidence the assignment under which *Sanderson* took possession of said property, and which was admitted to be the same recited at large in the report of the case of *Keep vs. Sanderson*, 2 Wis., 42, and which was, by the supreme court in that case, declared null and void as to the creditors of Manchester and Wentworth.

The defendant then offered to read in evidence his answer as garnishee, made on oath in open court in this cause, in May, 1855, to the introduction of which the plaintiff objected, because, the answer not having been satisfactory to him, he had made up an issue, which issue should be tried irrespective of the answer, and because, on the trial of that issue, the defendant was a competent witness, and his deposition had been taken on his own behalf and was on file. The court decided that the answer was not admissible in evidence, and the defendant excepted.

It was here admitted by the parties that *Sanderson* had been summoned as garnishee of Manchester and Wentworth, in several cases before the commencement of the present suit, and had therein been adjudged garnishee on account of what came into his hands under said assignment, and had, on the 1st of November, 1855, paid to the creditors of said Manchester and Wentworth, $8,165 on judgments in such cases.

The defendant then offered in evidence the record of a suit in the circuit court for Iowa county, commenced before this suit was instituted, in which Erastus Corning and others were plaintiffs, and Manchester and Wentworth were defendants, and in which he (the defendant) was summoned and answered as garnishee, by which it appeared that said circuit court, on his answer, (no issue having been made up between him and the plaintiffs in said cause) rendered judgment against him for only $183 03, although the judgment against said Manchester and Wentworth was for a much larger sum; which amount of 183 03 was paid to said Corning and others, and formed part of said sum of $8,165 admitted as above—the defendant claiming that said proceedings were a bar to this suit. To this testimony the plaintiff objected, because he was not a party to that suit, and because no issue was made up therein upon the answer of said garnishee, but the plaintiff therein was satisfied to take what he could get on the said garnishee's confession. The court decided that said record was not evidence for the purpose for which it was offered, to which the defendant excepted.

The defendant then offered to prove that in defending the cases in which judgment had been rendered against him as garnishee, and on which he had made said payments, amounting to $8,165, he had paid $300 costs, and $1,200 lawyers' fees. The plaintiff "admitted the facts," but objected to the introduction of the testimony, and the court sustained the objection, and the defendant excepted. The deposition of the defendant was then read as evidence in his own behalf. He testified that the money realized by him under the assignment was made out of real estate, to wit, several lots in the town of Beloit, which sold for about $1,500, half in six and

the balance in twelve months' time; and out of goods sold to Hackett and Hodge on twelve months' time, to the amount of $2,400; and by sale of goods from the store at different times; and from collections of accounts, notes, &c., due Manchester and Wentworth from sundry persons; and that he had "paid over to the creditors of Manchester and Wentworth every dollar which he had received from the assets of that firm, besides some $1,200 in expenses of litigation."

There was other evidence on both sides upon the questions of fact in issue between the parties, but as in the judgment of this court the proof was sufficient to sustain the finding of the circuit court as to the facts, and as no question of law arises upon such evidence, it is here omitted.

After the evidence was closed, the judge of the circuit court signed and filed a finding, as follows: "The court finds as facts, that the said *George B. Sanderson* was, on the day of service of process on him in this cause as such garnishee, to wit, the 9th day of June, A. D. 1854, indebted to the said T. C. Manchester and C. R. P. Wentworth in the sum of six thousand seven hundred and sixty-nine dollars and eighty-two cents; and the court finds, as matter of law, that the said *John M. Keep*, plaintiff, is entitled to a judgment in his favor, against the said *George B. Sanderson*, for the said sum of six thousand seven hundred and sixty-nine dollars and eighty-two cents. Dated June 3d, A. D. 1859." To this finding the defendant excepted, as not being in accordance with the requirements of the code.

On the 23d of July, 1859, the judge filed the following as an amended finding, the record stating that the finding first filed was hastily drawn by the counsel for the plaintiff, and did not fully set forth the facts found by the court: "The court finds, as matter of *fact*, that the said T. Clark Manchester and Charles R. P. Wentworth did, at Beloit, Rock county, on the 19th of February, 1852, make, execute and deliver to said defendant, *George B. Sanderson*, a certain assignment, in words and figures following, that is to say: [here reference is made to the assignment previously set forth in the record, which is the same recited at length in *Keep vs. Sanderson*, 2 Wis., 42,] and the said Manchester and

Wentworth, on the said 19th day of February, 1852, de-livered to said *Sanderson*, under said assignment, goods, wares and merchandise, and notes and accounts, of the value of upwards of *twenty thousand dollars*, which said *Sanderson* afterwards converted to his own use; and that said *Sanderson* has paid to different creditors of said Manchester and Wentworth, on judgments by which he has been adjudged garnishee of said Manchester and Wentworth, and in cases where said garnishee had been summoned as such before he was summoned as garnishee in this cause, the sum of $8,165 and no more; and that all the avails of said property as-signed, except said $8,165, remained in the hands of such garnishee at the time he was summoned as garnishee in this cause; and the court finds, as matter of fact, both of said issues joined in this cause for the said plaintiff, and finds that on the day when said *Sanderson* was summoned as gar-nishee in this cause, to wit,　　　　said *Sanderson* was justly indebted to said T. C. Manchester and Charles R. P. Went-worth in the sum of ten thousand dollars; that said *Sander-son*, on the day and year last aforesaid, had in his possession money to the amount of ten thousand dollars belonging to said Manchester and Wentworth, and that there is now due the plaintiff on the judgment in his favor against said Man-chester and Wentworth, recovered in a cause in which said *Sanderson* was summoned as garnishee, the sum of six thou-sand seven hundred and sixty-nine dollars and eighty-two cents, and which said ten thousand dollars so in said *Sander-son's* hands, is the same which the court finds the said *San-derson* owed to said Manchester and Wentworth. And as matter of *law*, the court finds that the said *John M. Keep*, plaintiff, is entitled to judgment in his favor, against the said *George B. Sanderson*, for the said sum of six thousand seven hundred and sixty-nine dollars and eighty-two cents. June 3d, A. D. 1859. HARLOW S. ORTON, Judge." To this find-ing the defendant duly excepted, insisting that the court had lost jurisdiction by its first finding. Motion for new trial overruled, and judgment for the plaintiff.

*Rockwell & Converse* (with whom was *James S. Brown*), for appellants, contended that as Manchester and Wentworth

were non-residents, and not served with process, there was no jurisdiction to render a judgment against them, unless their property was attached, or the garnishee was indebted to them, or had their property in his hands, and as the garnishee denied having any such property, or being indebted to them, and as the issue on that answer had not been determined at the time of entering judgment against Manchester and Wentworth, the court had no jurisdiction to render that judgment. 2. The writ of attachment and notice to answer were returnable when there was no term of court. The amendments that were made were jurisdictional, and cannot be allowed in suits of this kind. 3. The filing of the amended finding by the court in this case, was without authority. Chap. 132, § 19, R. S., 1858; *Sands vs. Church*, 2 Selden, 347. 4. The amended finding is insufficient and defective, because it fails to find that the assignment was void, or that it was ever so declared by the court. 5. Neither lands nor the proceeds thereof, are garnishable. If the conveyance was fraudulent, as argued, no title passed, and every creditor could seize the land; if the proceeds of the sale by the garnishee could be garnished, he would have to pay one creditor, and another would take the land. *Howe vs. Field*, 5 Mass., 390; *Dickinson vs. Strong*, 4 Pick., 57; *Ripley vs. Severance*, 6 id., 474; *Gore vs. Clisby*, 8 id., 555; *Bissell vs. Strong*, 9 id., 562; *Moor vs. Towle*, 38 Maine, 133; *Risley vs. Welles*, 5 Conn., 431; 7 N. H., 590; 13 Vt., 615; Drake on Attachment, 479-481. Notes held by *Sanderson*, whether those which were assigned originally, or those taken upon settlement of accounts or sales, cannot be garnished. Neither choses in action, nor any other claim or thing that cannot be exposed to sale on execution by the mere passing over by the garnishee, can be garnished. *F. & M. Ins. Co. vs. Weeks*, 7 Mass., 438; *Guild vs. Holbrook*, 11 Pick., 101; 4 id., 57; *Andrews vs. Ludlow*, 5 id., 28; *Perry vs. Coates*, 9 Mass., 537; *Lupton vs. Cutler*, 8 Pick., 298; *Copeland vs. Weld*, 8 Maine, 411. The garnishment refers to the time of its service for its operation; it affects the property or indebtedness then held or owing; it can hold no after accruing indebtedness, or after

received money or property; it relates to the then status of property or debt. 12 Pick., 116; 6 id., 358; 1 Wis., 447; Drake on Attachment, § 667, and cases there cited. It appears from the evidence that very little, if any thing, subject to garnishment, was in the hands of *Sanderson* at the time the notice was served on him. 6. Garnishment is in the nature of a proceeding *in rem;* its aim is to invest the plaintiff with the right to appropriate to the payment of his claim, the property of the defendant found in the garnishee's hands, and in no case, with a single exception, can a person be held as garnishee, unless the defendant could maintain an action *ex contractu*; this exception is in the case of an assignment fraudulent in fact, in which case the personal property assigned as such, and capable of being sold on execution, can alone be held, and a judgment against the garnishee only exposes the personalty held by him, to sale on execution running against the property of the defendant in the attachment; in other words, the property is, by this proceeding, discovered and released from the pretended claim of the garnishee, and exposed to seizure. Drake on Attachment, §§ 479, 541, 543; *Belknap vs. Gibbens*, 13 Met., 471.

*Mat. H. Carpenter*, for respondent:

1. The finding sets out the assignment in full. This being void upon its face (*Keep vs. Sanderson*, 2 Wis., 42), it was unnecessary for the court to find, as *matter of fact*, that it was made with intent to hinder, &c. Moreover, the provision of the code as to findings did not apply. There was a feigned issue, and the finding was sufficiently full on *the issued joined*. 2. It was competent for the court to amend its finding. *People vs. Dodge*, 5 How. Pr. R., 47; *Sands vs. Church*, 2 Seld., 347, 357. 3. Money realized on real estate, may be reached by the process of garnishment, though real estate itself cannot. 4. A garnishee, who has used the money of the defendant in his hands, and resists the claims of creditors upon the fund, will be charged with interest. *Willings vs. Consequa*, Peters' C. C. R., 301, 321; Drake on Attachment, § 689. 5. The defendant's answer was not admissible in evidence. *Lasley vs. Sisloff*, 7 How. (Miss.), 157. If ad-

missible, it was unimportant, as his deposition to the same effect was read.   6. The defendant must pay from his own funds the cost of resisting the just claims made against him as garnishee.   Drake on Attachment, 1st ed., § 678, and cases cited.

*By the Court*, PAINE, J.   We have no doubt of the right of the judge below to amend his finding after an exception taken.   The object of exceptions on the trial, and to the instructions of the court to the jury, is to call the attention of the judge to the particular point of objection, that he may correct at the time any thing which he may think needs correction.   Where the trial is before the judge without a jury, and he afterwards files his finding, if, on exception afterwards filed, he has no power to amend it, one of the principal objects of an exception at the trial, for which these written exceptions are a substitute, would be defeated.   We think the right exists, and that the time and manner of its exercise must depend in a great measure upon the discretion of the judge who tries the case.   *Sands vs. Church*, 2 Seld., 347, sustains such right of amendment.   The amended finding we think sufficient to sustain the judgment.   It finds the fact of the assignment, setting forth a copy of it.   And although it does not say that the judge finds it fraudulent, yet this court has decided upon this identical assignment, that it must be deemed "by its very terms," "fraudulent in law and in fact."   It was said that the court did not state in the finding that this was the same assignment previously decided upon by this court, and that although that fact was admitted on the trial, yet we cannot look to that admission in determining whether the finding itself is sufficient to support the judgment.   This is perhaps true, yet we do not deem such statement necessary.   For it appears at all events that the assignment set forth is in the same words as the other, and if the other is "by its terms fraudulent in law and fact," then this, which is in the same terms, whether the same instrument or not, must be equally so deemed.   The court having decided that an instrument in those terms is fraudulent in law and fact, we think its invalidity sufficiently ap-

pears in the finding, when its terms appear. The invalidity of the assignment is necessarily included in the general finding, that the proceeds of the property assigned were liable for the debts of the assignors.

It was claimed by the counsel for the appellant, that this court, in the case of *Kearney and others vs. Norton*, decided at the last term, had overruled the previous decision in the case of *Keep vs. Sanderson*. But certainly we did not intend to do so, and we think there is nothing in the opinion which warrants that conclusion. On the contrary, the decision in *Kearney vs. Norton* is placed expressly upon the different language of the assignment, which was not the same nor equivalent to that used in the instruments decided fraudulent in *Keep vs. Sanderson* and *Hutchinson vs. Lord*. It will be seen by reference to the latter case, (1 Wis., 313, *et seq.*,) that great stress is laid on the use of the word "terms," in connection also with the word "prices." The latter word being used, it was held that the word "terms" must be held to relate to the time of payment, and imply a power to sell on credit. There is nothing in the reasoning that goes to show that the court would have extended the same rule to an instrument like that in *Kearney vs. Norton*, in which the assignee undertook to dispose of the goods, &c., to the best advantage "in his discretion," &c. As there are many matters upon which an assignee might be called upon to exercise a sound discretion in disposing of assigned property, even though not selling on credit, we construed that language in the instrument as referring only to such discretion as he might properly exercise, and not as implying an illegal discretion to do acts which would avoid the instrument, without intending to disturb the previous decisions upon the effect of specific words in an assignment. We shall therefore adhere, without hesitation, to the decision already made by this court, between these parties, upon this assignment, holding it void.

And we have no doubt the assignee is liable, although he had disposed of the identical property transferred, and received cash or other property in its stead. If this were not so, it would be very easy for a fraudulent assignee or pur-

chaser to elude all responsibility by a speedy disposition of the property, and putting the money in his pocket. The creditors may take the property or its proceeds in his hands.

We think there was no error in refusing to admit the answer of the garnishee in evidence on the trial of this issue. An issue having been made, it would seem that it should be tried irrespective of the answer. *Lasley vs. Sisloff*, 7 How. (Miss.), 157. But as the law now is, the defendant was permitted to testify in his own behalf, and accordingly had his deposition taken, which was read in evidence. This being so, he certainly had all the benefit that he could have had from his answer.

Nor do we think there is any weight in the objection that there was a want of jurisdiction to render the judgment in the original attachment suit. The argument is this: The debtors being non-residents and not being served, there was no jurisdiction, unless their property or indebtedness was attached in the hands of the garnishee. But as the garnishee denied having any property or being indebted, and as this had not been determined at the time of entering judgment against the principal debtor, it is therefore claimed that there was no jurisdiction to enter that judgment; because, it is said, the jurisdiction must exist at the time, if it exist at all, and cannot be acquired by anything happening afterwards. This proposition is very true, but does not support the conclusion sought to be derived from it. For if it eventually turns out that the garnishee had property or was indebted, then the property or indebtedness was attached at the time of the service upon the garnishee. And it is that fact which gives jurisdiction against the principal debtor, and not its subsequent legal ascertainment. And the fact, if it exist at all, existed at the time of the entry of the judgment, and therefore jurisdiction existed, and was not conferred, but only ascertained, by the subsequent judgment against the garnishee.

We think the conclusion of the court below, as to the amount, warranted by the evidence, so far as to sustain this judgment, and must therefore affirm it, with costs.