JOHNSON *v.* ADAMS & COMPANY.

Where it appears from the instrument of writing executed by a debtor insolvent at the time of the transaction, and from the parol evidence explanatory thereof, that personal property consisting of various items was delivered to a creditor, not on a contract of absolute sale to him but with the understanding that he was to pay over to another creditor either a part of the property or a part of its proceeds and retain the balance on a debt due him, the transaction was an assignment for the benefit of creditors, and, it not being made with the inventory and schedule required by statute, the same was void under section 1952 of the code and the act of October 17th, 1885 (Acts 1884–5, p. 100), and the property assigned was subject to attachment at the instance of other creditors of the common debtor.   The distinctive test between an assignment and a sale where another creditor is to be paid off, is that in the former case such other creditor is to receive some of the property or its proceeds, and in the latter the creditor to whom title is passed takes for himself the whole property, stipulating to pay the other creditor out of his own means and not out of the property or its proceeds.   This distinction reconciles the present case with *Powell*

v. *Kelly*, 82 *Ga.* 1. And see *Stillwell* v. *Savannah Grocery Co* , 88 *Ga.* 141 ; *Kiser* v. *The Dannenberg Company*, 88 *Ga.* 541.

July 26, 1893.             *Judgment affirmed.*

Attachment and claim. Before Judge Ross. City court of Macon. September term, 1892.

Attachment was sued out by Adams & Co. against Mann on November 4, 1891, and was levied on a stock of goods in a storehouse at Echeconnee, and on certain horses, vehicles, cows, etc. A claim to the property was interposed by Johnson, and the evidence in his behalf was, that the levy was not made until November 5, and after a transfer of the property to him by Mann. He introduced the following paper :

" Macon, Ga., November 4th, 1891.

"This is to certify that I have this day sold and delivered to Dr. J. C. Johnson the entire stock of goods and fixtures in his store at Echeconnee on the Houston road, also one grey horse, one two-horse wagon and harness, one one-horse wagon and harness, one road-cart, one lot potatoes, one lot of sugar cane, and the corn on said place, two cows and one calf. Also the farming utensils and cotton-seed on said place, to be credited on amount due himself for rent, etc., and J. D. Hudgins of Macon, Ga.     (Signed)     H. W. Mann.

"Attest : C. W. Barton, W. M. Morgan, R. M. Harris."

There was a verdict for the claimant as to a part of the property, and on motion the court granted a new trial, holding that the transaction between Mann and Johnson was not a sale of the property in dispute by Mann to Johnson, but was an assignment by an insolvent person (Mann) for the benefit of his creditors Johnson and Hudgins ; and that the conveyance not having attached thereto any schedule of assets and creditors, etc., and not having been properly executed and filed, as required by law, was void.

In the testimony of the claimant is the following : " I know H. W. Mann ; he turned over the property to

me in settlement of rent for about $500 which he owed me, on the morning of the 4th of September(?)—on the morning of the 5th is my recollection, last year. · . . Mann, in compliance with his directions the day before, turned me over the goods on the next day, and I went to receive them after buying them the evening before when I met him at the train, but he hadn't transferred the papers, and I went back the next morning and received the goods from Mann. . . I went down on the 3d of November, 1891, at Mann's request. . . When I got there I went to Bob Johnson and took a distress warrant, and came back and placed it in the hands of Blackshear and told him, if he had to levy, to levy mine also; don't know whether he levied mine or not, except what he told me. I returned to Mann (Macon?) that evening and bought the things from Mann at the union depot at 8 or 9 o'clock at night. Mann said then Blackshear had been down there; don't know that he said anything about the constable being down there. I had seen him there, and Mann told me he came to try and settle the things with Adams & Company and failed, and he had made application for a homestead, and he said he would sell me everything he had to satisfy me ' so far as it will go on what I owe you and Captain Hudgins,' and we agreed upon a division; and when I got there the next morning, Mann agreed for me to take the stock of goods and everything on the place, and I took charge, and I was to pay Captain Hudgins a third of the value, and the other two thirds belonged to me. It was all to be turned over to me, and I was to pay Hudgins a third."

Mann testified: "I signed this paper on the day written. The day previous to the writing of this note, I met Dr. Johnson at the depot and told him to come out, I wanted to turn him over all the property I had for a division between him and Hudgins; and he came out the next day, and I turned them over to him. I

turned them over to him in the morning, and I gave this paper in the morning. I turned over the things the same day the paper was written. . . I met Dr. Johnson at the train that evening, and told him I wanted to turn over all the property I had in settlement of his and Hudgins' claim, and told him to come out the next day, and he did, and I went back that night and turned the goods over to him that night. . . I never gave the paper to Dr. Johnson until the second day. I virtually made the trade the first day, and turned goods over in depot. I told Johnson that evening to come out, I wanted to turn over everything to him next time he came out, and I turned over everything to him. . . I gave Johnson this paper because he was a preferred creditor, from the fact his claim was older than Adams', and he extended me courtesies that I felt under obligations to him. . . I endeavored to make this sale to Johnson for the purpose of saving Johnson and Hudgins; they were my preferred creditors. . ."

J. L. Hardeman and W. D. Nottingham, for plaintiff in error. Owens Johnson and W. B. Willingham, contra.